NORTHAMPTON HOUSING AUTHORITY *vs*. DANIEL KAHLE.

No. 08-P-535.

Hampden. December 17, 2008. - June 30, 2009.

Present: DUFFLY, DREBEN, & RUBIN, JJ.

*Housing Authority. Veteran. Landlord and Tenant,* Rent. *Housing.*

A housing authority that sought to increase the rent on an apartment paid by a
tenant (a Vietnam veteran) who had received retroactive compensation for
his service-connected disability, and also sought a retroactive payment of
rent, could not charge the tenant in excess of the fair market rental value
of the apartment. [563-565]

SUMMARY PROCESS. Complaint filed in the Western Division of
the Housing Court Department on January 9, 2006.

The case was heard by *William H. Abrashkin,* J., on motions
for summary judgment.

*Stephen R. Kaplan* for the defendant.

*Thomas M. O'Connor* for the plaintiff.

DREBEN, J. Daniel Kahle, a tenant of the Northampton Hous-
ing Authority (NHA) and a Vietnam veteran, has resided in a
State-aided housing development since 1996. In March, 2005,
the Board of Veterans' Appeals (VA)[1] held that he was entitled
to compensation, including retroactive compensation, for his
service-connected disability of post-traumatic stress disorder. In
the months prior to the VA decision he paid $254 per month
rent. Because of Kahle's disability receipts from the Federal
government, the NHA determined that he was required to pay
as rent an amount equal to thirty percent of his net household
income, or $934 per month even though such amount exceeded
the fair market rent of the unit. He was also required to make a

---

[1]In this opinion references to any office of the Department of Veterans Affairs
are designated as VA.

retroactive payment of about $54,000. When Kahle refused, claiming he was obligated to pay no more than what has been determined to be the fair market rent, NHA brought a summary process action. After the parties filed cross motions for summary judgment, a judge of the Housing Court allowed NHA's motion for summary judgment and judgment entered for NHA for $56,297.90 and costs.[2] Kahle appeals, claiming that the NHA may not charge him in excess of the fair market rental value of his apartment. We agree and vacate the judgment. We remand the matter to the Housing Court for the entry of a new judgment based on the fair market rental value of Kahle's apartment during the period covered by the disability payments.

*Background.* The facts are undisputed.[3] Kahle has resided in a one-bedroom apartment in a development of NHA since 1996. NHA, a local housing authority organized pursuant to authority granted by G. L. c. 121B, § 3, has received an annual subsidy from the Department of Housing and Community Development (DHCD) to operate its State housing programs throughout the period of Kahle's tenancy.

In a letter from the VA, dated April 7, 2005, Kahle was notified of an order dated March 11, 2005 finding that Kahle's diagnosis of post-traumatic stress disorder was connected to his active duty in Vietnam, and that the order was retroactive to May 11, 1998. The letter detailed his monthly entitlements for each year from 1998 forward. The amount increased yearly and entitled him to a retroactive payment of $173,704. On April 13, 2005, Kahle deposited the check (in a slightly lesser amount due to unspecified deductions), and on or about May 5, 2005 informed the NHA of the award. As indicated earlier, prior to receipt of the increased VA compensation Kahle's rent was $254 per month which he timely paid. In July, 2005, the executive director of NHA notified Kahle that because of his retroactive compensation

---

[2]Kahle has posted an appeal bond in the sum of $57,000.

NHA has not sought Kahle's removal from his unit. In his answer to the complaint, Kahle requested to remain in his apartment on equitable grounds as it contains a setup of medical equipment to accommodate his condition.

[3]The judge allowed NHA's motion for the reasons set forth in its memorandum of law and made no additional findings of fact. Subsequently, the parties filed a joint request setting forth uncontested facts that was adopted by the judge.

for the period from June, 1998 to April, 2005 and increased com-
pensation from April, 2005 through July, 2005, regulations re-
quired him to pay a one-time retroactive rent payment to NHA of
$54,192[4] calculated pursuant to 760 Code Mass. Regs. § 6.04(9)
(2003), and because of his increased income, effective September
1, 2005, his monthly rent would be increased to $934[5] pursuant
to 760 Code Mass. Regs. § 6.04(1)(a)(1) (2003), which requires
a monthly rent payment of thirty percent of net household income.[6]

Since September 1, 2005, Kahle has paid $609 each month.[7]
According to NHA calculations, this leaves a monthly arrears of
$325 plus a monthly $25 late fee. Additional facts will be set
forth in other sections of this opinion.

*Statutory and regulatory framework.* One of the purposes for a
city to establish a housing authority is to provide housing for
families or elderly persons of low income. Section 32 of G. L.
c. 121B, first par., as amended through St. 2003, c. 26, § 366,
states:

> "It is hereby declared to be the policy of this commonwealth
> that each housing authority shall manage and operate decent,
> safe and sanitary dwelling accommodations at the lowest
> possible cost, and that no housing authority shall manage
> and operate any such project for profit. To this end, an
> authority shall fix the rents for dwelling units in its projects
> in accordance with regulations issued by the [DHCD], so
> that no tenant shall be required to pay a rental of more
> than . . . 30 percent of his income if one or more utility is
> provided . . . ."

Section 32 has special favorable provisions relating to veterans,
particularly those with service-connected disabilities. As between

----

[4]The amount was subsequently lowered to $53,014 to reflect an effective date
of the retroactive rent increase of August 1, 1998 rather than June 1, 1998.

[5]Kahle's monthly VA disability compensation in July, 2005 was $2,299 and
his monthly Social Security compensation was $814 or a total of $3,113.
Thirty percent of that figure equals $934.

[6]The sections of the current regulations that are cited in this opinion are the
same as were effective in October and November of 1998. The regulations in
effect in June, 1998 (or August, 1998, see note 4, *supra*) also provided for
retroactive payments on account of delayed receipts.

[7]Effective October 1, 2005 the fair market rent for Kahle's one-bedroom
apartment is $629 a month.

applicants equally in need and eligible for occupancy, it provides preference for such veterans,[8] permits a housing authority to exclude from net income amounts paid by the United States for disability occurring in connection with military service in excess of $1,800 in any year,[9] and provides that a housing authority may not deny continued occupancy to a veteran who has lived in a unit of two bedrooms or less during the last eight consecutive years, provided that the rent is not more than three months in arrears.[10]

The regulations are more detailed, and as relevant here, include a provision, 760 Code Mass. Regs. § 6.04(9),[11] that if a tenant

[8]"As between applicants equally in need and eligible for occupancy of the dwelling and at the rent involved, preference shall be given in the selection of tenants in the following order: — (1) to families or eligible persons which are to be displaced by any low-rent housing project or by a public slum clearance or urban renewal project initiated after January first, nineteen hundred and forty-seven, or other public improvement, or which were so displaced within three years prior to making application to such housing authority for admission to any low-rent housing; and as among such families first preference shall be given to families of disabled veterans whose disability has been determined by the veterans' administration to be service-connected, and second preference shall be given to families of deceased veterans whose death has been determined by the veterans' administration to be service-connected, and third preference shall be given to families of other veterans; and (2) to families of other veterans, and as among such families first preference shall be given to families of disabled veterans whose disability has been determined by the veterans' administration to be service-connected, and second preference shall be given to families of deceased veterans whose death has been determined by the veterans' administration to be service-connected . . . ." G. L. c. 121B, § 32, third par., cl. f, inserted by St. 1969, c. 751, § 1.

Kahle qualifies as a totally unemployable veteran.

[9]"In determining the net income for the purpose of computing the rent of a totally unemployable disabled veteran, a housing authority is authorized to exclude amounts of disability compensation paid by the United States government for disability occurring in connection with military service in excess of eighteen hundred dollars in any year, but such authorization shall apply only in state-aided projects . . . ." G. L. c. 121B, § 32, fifth par., inserted by St. 1969, c. 751, § 1.

[10]"In the operation or management of state-aided low rent housing projects, an authority shall not, if the tenant, in a unit consisting of two bedrooms or less, is a veteran or a widow or widower of a veteran . . . and has lived in the residency for at least the last eight consecutive years, deny such a tenant continued occupancy at such residence provided that the rent is not more than three months in arrears." G. L. c. 121B, § 32, ninth par., amended by St. 1994, c. 304.

[11]"*Late Payments of Income*. If a tenant receives any includable income at

receives any includable income retroactively, a housing authority shall charge a one-time retroactive rent charge for such income that in the normal course would have been paid to the tenant at a time when the tenant occupied a housing unit.

*Discussion.* NHA concedes that the rent it is seeking is in excess of the fair rental value of Kahle's apartment. See note 7, *supra.* Nevertheless it relies on G. L. c. 121B, § 32, and 760 Code Mass. Regs. § 6.04(1)(a)(1),[12] which require the tenant to pay thirty percent of the net household income as rent and do not provide a cap. It points out that although G. L. c. 121B, § 32, and 760 Code Mass. Regs. § 6.05(3)(n) (2003)[13] authorize a local housing authority in its discretion to exclude the disability compensation received by Kahle in excess of an annual amount of $1,800, the board of commissioners of NHA discussed this provision in 1992 and 1993. Although they originally adopted the provision, the board immediately rescinded its vote, and NHA has included VA disability compensation as net income for all tenants. Within the last three years, it states that eleven tenants or former tenants received such compensation.

a date later than the date when the income would have been paid in the normal course (such as payment of past-due workers' compensation benefits for lost wages, past-due SSI or SSDI benefits, or retroactive salary increases, and if such income has not been included in the determination of household income), tenant shall report receipt of the income to the LHA [or local housing authority] within seven days after receipt. The LHA shall charge a one-time retroactive rent charge on account of any part of such income which in the normal course would have been paid at a time when tenant occupied an LHA unit. A tenant who receives and timely reports receipt of such income shall pay any such retroactive rent due on account of such income without interest upon receipt of a bill from the LHA. If tenant shall fail to report such income or shall fail to make such a one-time retroactive rent payment within 30 days of receipt of a bill, the LHA may charge interest on the additional rent due for the period beginning 30 days after receipt of the income at a rate of interest in accordance with law and the LHA's rules."

[12]"Where the tenant does not pay for utilities, rent shall be 30% of monthly net household income as determined pursuant to 760 [Code Mass. Regs. §] 6.05."

[13]"Gross household income shall not include . . . (n) At the discretion of the LHA, with respect to an unemployable disabled veteran, whose disability occurred in connection with military service, all but $1,800 of the annual amount received by the unemployable disabled veteran from the United States Government on account of such disability; if the LHA in its discretion excludes all but $1,800 of such amount, no deductions shall be applied against that $1,800."

Kahle points to the provision in § 32, quoted earlier, stating that "no housing authority shall manage and operate any such project for profit." Another provision in § 32 indicates that the statute looks to the unit, and not to the project, in determining cost, and presumably profit.[14] These provisions suggest that a housing authority is precluded from charging an amount in excess of fair market rent unless specifically authorized.[15] At least this is true as to Kahle, since as a veteran he is entitled under § 32 to continued occupancy having resided in his one-bedroom apartment for more than eight years. Such entitlement would be of little benefit if NHA could charge in excess of market rent.

Kahle's argument that VA benefits fall within the exclusion of 760 Code Mass. Regs. § 6.05(3)(b) (2003) as "[a]mounts . . . which are made to compensate for personal injury" fails because of the specific language of § 32. See note 9, *supra*. The statute authorizes such exclusion but does not require it. Thus, § 6.05(3)(b) excluding personal injury compensation must be read in conjunction with the statute and with 760 Code Mass. Regs. § 605(3)(n), which indicates that such exclusion is "[a]t the discretion" of the housing authority.

Kahle's additional argument that 760 Code Mass. Regs. § 6.04(9) does not apply because there is no contractual basis for such a retroactive payment is also without merit. The regulation, see note 11, *supra*, does not require an agreement by Kahle, but requires him to pay increased rent for the period in which the retroactive compensation would have been paid. Moreover, section IV(C) of Kahle's lease contains a requirement that the

[14]"Any deficiency in the budget of a housing authority caused by such reduced rental shall be paid by the commonwealth to the housing authority in an amount equal to the difference between the tenant's rent and the prorated cost of operating that unit." G. L. c. 121B, § 32, first par., as amended by St. 1979, c. 669, § 1.

[15]For example, 760 Code Mass. Regs. § 6.04(2)(b) (2003) provides that following the termination of a lease "if [a] tenant fails to vacate, tenant shall pay monthly, in advance, the fair value of use and occupancy of the unit . . . , but not less than the rent in effect at the time of termination." In addition, G. L. c. 121B, § 32, first par., inserted by St. 2003, c. 26, § 366, provides: "If an overhoused tenant household refuses a transfer to an available unit of appropriate size, the tenant shall be subject to a minimum rental fee of 150 percent of the tenant's rent."

tenant make an additional rental payment on account of such payments,[16] and also section XVIII of the lease states that both he and the NHA are bound by the regulations.

Kahle has made no argument that he is entitled to a rental less than the fair market rental value of the unit, and we do not consider that question.

*Conclusion.* The judgment is vacated and the matter is remanded to the Housing Court to enter a judgment for retroactive rent based on the fair market rental value of Kahle's apartment at the respective time periods covered by each of the retroactive payments, e.g., the fair market rental value for the period June 1, 1998 (or August 1, see note 4, *supra*) to December 1, 1998, for the period December 1, 1998 to December 1, 1999, and so forth. No late charge or interest is to be added. Rent for the period September 1, 2005 forward is to be computed at the then current figures for the fair market rental value of Kahle's unit.

*So ordered.*

---

[16]Section IV(C) of the lease provides: "If Tenant or another household member receives delayed payments of income (such as receipt of retroactive wage increases or receipt of worker's compensation, SSI, or SSDI benefits for the time period while the claim for benefits was being determined), if such income has not been previously reported, Tenant shall report receipt of the income to NHA within seven (7) days after receipt. An additional rental amount shall be computed by the percentage set out in the [DHCD's] regulations and charged on account of so much of the income which, if not delayed, would have been paid at a prior time during Tenant's tenancy at NHA. Tenant shall pay the additional rental amount due on account of such income (without interest) upon receipt of a bill from NHA."